USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/6/2023

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CAPITAL2MARKET CONSULTING, LLC,

                    Plaintiff,

          - against -

CAMSTON WRATHER, LLC,

                    Defendant.

**22 Civ. 7787 (VM)**

**DECISION AND**
**ORDER**

**VICTOR MARRERO, United States District Judge.**

Plaintiff Capital2Market Consulting, LLC ("Capital 2Market" or "Plaintiff") brought this action in the Supreme Court of the State of New York, New York County ("State Court") against defendant limited liability company Camston Wrather, LLC ("Camston Wrather" or "Defendant"), alleging that Camston Wrather had breached a contract between the parties by failing to make payment in the amount of $600,000. Camston Wrather removed the action to federal court on the basis of diversity jurisdiction, representing that it, as a limited liability company, had California and Nevada citizenship because of the citizenship of its two members, Dirk Wray and Aaron Kamenash.

Months after removing the case, while repeatedly asserting its citizenship and composition of its membership, and opposing remand, Camston Wrather disclosed that it had misrepresented its citizenship and membership, such that

there was no diversity jurisdiction in the case. The Court remanded the case to State Court and directed Camston Wrather to show cause why it should not be sanctioned. Having found Camston Wrather's response unpersuasive, the Court directed Capital2Market to submit documentation of sums it expended because of Camston Wrather's misrepresentations.

Now pending before the Court are the declaration and exhibits of Capital2Market's counsel regarding the expenditures Plaintiff incurred for attorney's fees and costs. For the reasons set forth below, Camston Wrather is **ORDERED** to pay Capital2Market $71,176.50 in attorney's fees and costs.

## I.    BACKGROUND

Capital2Market filed an action against Camston Wrather in State Court, alleging that Camston Wrather breached a contract between the parties by failing to make payment in the amount of $600,000. (See Dkt. No. 5-1.)

Camston Wrather timely removed the action to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. Sections 1332, 1441, 1446, and 1447. (See "Notice of Removal," Dkt. No. 5.) As a limited liability company, Camston Wrather derives its citizenship from the citizenship of its two members. In its Notice of Removal, Camston Wrather represented that "[i]n or around July 2014, Defendant Camston

Wrather, LLC was formed as a limited liability company in the State of California" and was "a citizen of the State of California and the State of Nevada" because it has "two manager/members," one of whom "is a resident of, domiciled in, and a citizen of [] Nevada," and another who "is a resident of, domiciled in, and a citizen of [] California." (Id. ¶¶ 15, 17, 22.) In support of removal, Camston Wrather submitted the declaration of an employee, Andrew Litt, and declarations of the company's two members, Dirk Wray and Aaron Kamenash. (See Dkt. No. 5-5 ¶ 5; Dkt. No. 5-6 ¶¶ 3-4; Dkt. No. 5-7 ¶¶ 3-4.)[1] Each declaration was sworn under penalty of perjury, and made the same representations regarding Camston Wrather's membership and citizenship. (See id.)

Responding to this action, Camston Wrather filed a Motion to Dismiss for Lack of Personal Jurisdiction and Forum Non Conveniens. (See Dkt. No. 6.) Upon consideration, the Court denied the motion because of Camston Wrather's failure to comply with the pre-motion practices required by Section II.B of the Court's Individual Practices.

---

[1] For reference, Andrew Litt is the "Vice President of Human Resources, Risk Management, and Legal Affairs of" Camston Wrather. (Dkt. No. 5-5 ¶ 2.) Dirk Wray is the "Chief Executive Officer" and a member of Camston Wrather. (Dkt. No. 5-6 ¶¶ 2-3.) Aaron Kamenash is the "Co-Founder and Chief Innovation Officer" and a member of Camston Wrather. (Dkt. No. 5-7 ¶¶ 2-3.)

Capital2Market then wrote to the Court requesting a pre-motion conference regarding whether diversity of citizenship existed between the parties. (See Dkt. No. 9.) Capital2Market explained that they believed Camston Wrather had undisclosed members with Delaware citizenship, including "CW Partners Carlsbad, LLC." (Id.) If true, this would destroy the diversity of citizenship, and thus the Court's jurisdiction to preside over the matter, because Capital2Market also had Delaware citizenship through its owner, C2M Holding Inc., a Delaware corporation. (Id.) In its submission, Capital2Market also informed the Court that Camston Wrather had failed to respond to multiple emails. (Id.)

The Court ordered Camston Wrather to respond to Capital2Market's request. (See Dkt. No. 11.) Subsequently, Capital2Market informed the Court that Camston Wrather had not responded to the request or otherwise communicated with Capital2Market. (See Dkt. No. 12.) Shortly thereafter, the Court ordered Camston Wrather to show cause within three days why the case should not be remanded to State Court. (See Dkt. No. 13.) The next day, Camston Wrather responded to the Court's order and Capital2Market's letter, denying having undisclosed members, including CW Partners Carlsbad, LLC, and maintaining that it had only California and Nevada citizenship. (See Dkt. No. 14.)

Capital2Market responded by reiterating its position
that removal of the case was improper because no diversity of
citizenship exists between the parties and requesting that
the Court retain jurisdiction after remand to adjudicate a
motion for sanctions. (See Dkt. No. 15.) Capital2Market also
noted in support that Camston Wrather's removal papers
contained its registration with the California Secretary of
State as a foreign entity, having been formed in Delaware,
undermining Camston Wrather's claim of being a California
limited liability company and raising doubts about its
citizenship. (See id.)

Concluding the parties' letter exchange, Camston Wrather
responded by explaining that "[w]hile Plaintiff is correct in
identifying that Defendant Camston Wrather, LLC (the
California limited liability company whom Plaintiff both
contracted with and filed action against) is registered as a
foreign entity established in Delaware, *the membership of
both entities is different*." (See Dkt. No. 17 (emphasis in
original).) Camston Wrather otherwise reiterated its
position as to remand, arguing that "Plaintiff's counsel's
repeated requests for additional information, or baseless
assertions that Defendant's facts are false, merit no further
inquiry[,]" so there was "no need for further discovery or

pre-motion conference practice," and that "there are no grounds to remand the matter." (<u>Id.</u>)

The Court then directed the parties to advise whether they consented to the Court deeming their letter exchange to constitute a fully briefed motion for remand or if they sought supplemental or full briefing. (<u>See</u> Dkt. No. 19.) The Court also ordered Camston Wrather to submit answers, within two weeks, to a series of questions regarding its citizenship, including identifying Camston Wrather's members and explaining how its registration as a foreign entity with the California Secretary of State created two separate entities. (<u>Id.</u>)

Capital2Market then filed a Motion to Remand along with a Memorandum of Law and Declaration in Support. (<u>See</u> Dkt. Nos. 20-22.) Prior to filing their opposition to the Motion to Remand, Camston Wrather requested an extension of time to respond to the questions posed by the Court, which the Court granted. (<u>See</u> Dkt. Nos. 25-26.) Then, on the date of the extended deadline, Camston Wrather informed the Court that it "withdr[ew] its opposition to Plaintiff's motion for remand" and "respectfully requests, in light of the forthcoming remand, that it be excused from compliance with the Court's [] order." (<u>See</u> Dkt. No. 27.) The same day, Capital2Market filed a letter in response, noting that their Motion for

Remand included a request for the Court to retain jurisdiction to consider whether sanctions were warranted for frivolous removal. (See Dkt. No. 28.)

The Court denied Camston Wrather's request to be excused from complying with the Court's order. (See Dkt. No. 29.) Later that day, Camston Wrather requested a second extension of time to comply with the Court's order, noting that since new counsel was retained "additional documentation has been reviewed which resulted in a change in Defendant's position regarding the remand." (See Dkt. No. 30.) No further detail was offered. The Court granted the second extension request. (See Dkt. No. 31.)

Camston Wrather then submitted its response to the questions posed in the Court's order, as well as a Corrected Sworn Declaration of Andrew Litt in Support.[2] (See Dkt. Nos. 32, 32-1.) Contrary to Camston Wrather's previous representations of only having two members and California and Nevada citizenship, Camston Wrather revealed it has seventy-seven members with an array of citizenships, including Delaware, thereby destroying diversity of citizenship between the parties. (See Dkt. No. 32-1.) Further, among the seventy-seven members was the entity Camston Wrather had previously

---

[2] To date, no corrected declarations have been submitted by Dirk Wray or Aaron Kamenash.

explicitly denied being a member, CW Partners Carlsbad, LLC. (See id.; Dkt. Nos. 14, 17.)[3]

The Court then remanded the case to State Court and ordered Camston Wrather to show cause why the Court should not award Capital2Market attorney's fees and impose other appropriate sanctions based on Camston Wrather's repeated misrepresentations to opposing counsel and the Court regarding its membership and citizenship. (See Dkt. No. 33.)

Camston Wrather responded to the Court's order to show cause why it should not be sanctioned, explaining that there was a "bilateral mistake of fact or understanding," noting how the mistaken designation of Camston Wrather as a California limited liability company appeared in the 2018 contract between the parties and again in Capital2Market's July 31, 2022 Complaint brought in State Court. (See Dkt. No. 34.) Camston Wrather also stated that its incorrect representations about its corporate form were not intentional or intended to cause delay and noted that the case had been delayed by only three months. (See id.)

The Court, having reviewed Camston Wrather's response and finding no persuasive explanation for its

---

[3] The Court notes that the seventy-seven members of Camston Wrather identified included multiple limited liability companies, whose members' citizenship would also need to be determined for diversity jurisdiction. (See Dkt. No. 32-1.) For instance, CW Partners Carlsbad, LLC alone has eighty-five members. (See id.)

misrepresentations, awarded Capital2Market attorney's fees and costs relating to Camston Wrather's misstatements. (See Dkt. No. 36.) Accordingly, the Court directed Capital2Market to submit within ten days documentation of its reasonable attorney's fees and costs expended as a result of Camston Wrather's misrepresentations. (Id.)

Eight days later, Capital2Market submitted the Declaration of Richard J.J. Scarola ("Scarola"), lead counsel for Capital2Market, as well as two exhibits (collectively, the "Declaration") regarding attorney's fees. (See Dkt. Nos. 37, 37-1, 37-2.) The Declaration described the professional backgrounds and billing rates of Scarola and his colleague who worked with him on this matter, Alexander Zubatov ("Zubatov"). The Declaration identified the time spent by Scarola and Zubatov because of Camston Wrather's removal of the case. (See Dkt. No. 37.) The Declaration separately identified the time Scarola and Zubatov spent on the issue of sanctions, including preparing the Declaration. (See id.) A detailed breakdown of hours worked was provided in the form of time slips. (See Dkt. Nos. 37-1, 37-2.)

The Declaration also explained that Capital2Market has a retention agreement with counsel, such that counsel is not billing and collecting their ordinary and customary time charges as part of this matter. (See Dkt. No. 37.) The

9

Declaration further stated that Capital2Market has agreed to pay any award of attorney's fees over to its counsel as compensation for work done relating to the removal. (See id.)

Camston Wrather responded to Capital2Market's submission, arguing that no attorney's fees should be awarded because Capital2Market's alternative fee arrangement with its counsel meant that no sums were actually expended in litigating Camston Wrather's frivolous removal. (See Dkt. No. 38.)

## II.   LEGAL STANDARD

### A.   DIVERSITY JURISDICTION AND REMOVAL

A civil action brought in a state court may be removed to federal court where the federal district court has original jurisdiction. See 28 U.S.C. § 1441. The party asserting federal jurisdiction has the burden of establishing jurisdiction. See Blockbuster, Inc. v. Galeno, 472 F.3d 53, 57 (2d Cir. 2006). District courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [] citizens of different States." 28 U.S.C. § 1332. "The Supreme Court has interpreted 'citizens of different States' to grant jurisdiction only 'if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of

the same State.'" <u>Platinum-Montaur Life Scis., LLC v. Navidea</u> <u>Biopharmaceuticals, Inc.</u>, 943 F.3d 613, 617 (2d Cir. 2019) (quoting <u>Wis. Dep't of Corr. v. Schacht</u>, 524 U.S. 381, 388 (1998)) (emphasis in original). The citizenship of a limited liability company is determined by the citizenship of its members. <u>See</u> <u>Bayerische Landesbank, New York Branch v.</u> <u>Aladdin Cap. Mgmt. LLC</u>, 692 F.3d 42, 49 (2d Cir. 2012) (noting that "a limited liability company takes the citizenship of each of its members").

B.  ATTORNEY'S  FEES  FOR  FRIVOLOUS  REMOVAL  UNDER  28 U.S.C. § 1447(c)

Where a federal district court does not have jurisdiction over a removed action, the action must be remanded. <u>See</u> <u>United Food & Com. Workers Union, Loc. 919,</u> <u>AFL-CIO v. CenterMark Prop. Meriden Square, Inc.</u>, 30 F.3d 298, 301 (2d Cir. 1994) ("[w]here jurisdiction is lacking, [] dismissal is mandatory"). Under 28 U.S.C. Section 1447(c) ("Section 1447(c)"), a district court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c).[4] "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party

---

[4] A court may resolve fees and costs under Section 1447(c) following remand. <u>See</u> <u>Bryant v. Britt</u>, 420 F.3d 161, 165 (2d Cir. 2005) (holding that a "district court has jurisdiction to resolve a motion for fees and costs under § 1447(c) after a remand order has issued").

lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005). "A basis for removal is 'objectively reasonable' if the removing party had a colorable argument that removal was proper." Nguyen v. American Express Company, 282 F. Supp. 3d 677, 683 (S.D.N.Y. 2017) (quoting In re Standard & Poor's Rating Agency Litig., 23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014)). "In practice, if lack of jurisdiction was not obvious from the face of the removal petition and no other unusual circumstances obtain, a court cannot conclude that an objectively reasonable basis was lacking." Id. at 683-84 (quoting Little Rest Twelve, Inc. v. Visan, 829 F. Supp. 2d 242, 245 (S.D.N.Y. 2011)). A district court need not find that the removal was done in bad faith to award attorney's fees. See Morgan Guar. Trust Co. of New York v. Republic of Palau, 971 F.2d 917, 923 (2d Cir. 1992).

C.   CALCULATION OF ATTORNEY'S FEES

If the court determines that an award of fees is warranted, it must then "determine what fee is 'reasonable.'" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The court determines what fee is reasonable by first "determining a reasonable hourly rate by considering all pertinent factors,

including the <u>Johnson</u> factors,[5] and then multiplying that rate by the number of hours reasonably expended to determine the presumptively reasonable fee." <u>Lilly v. City of New York</u>, 934 F.3d 222, 230 (2d Cir. 2019); <u>see also</u> <u>Wachovia Mortgage, FSB v. Toczek</u>, 841 F. App'x 267, 269 (2d Cir. 2021) (analyzing the award of fees under Section 1447(c)) (summary order). The <u>Johnson</u> approach directs courts to take into account the following considerations:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Lilly</u>, 934 F.3d at 228 (quoting <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. Of Elections</u>, 522 F.3d 182, 186 n.3 (2d Cir. 2008)). "A district court need not recite and make separate findings as to all twelve <u>Johnson</u> factors, provided that it takes each into account in setting the attorneys' fee award." <u>Casmento v. Volmar Constr., Inc.</u>, No. 20 Civ. 944, 2022 WL 17666390, at

---

[5] The <u>Johnson</u> factors are based on the Fifth Circuit's decision in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974).

*3 (S.D.N.Y. Dec. 14, 2022). Viewed otherwise, "[t]he reasonable hourly rate is the rate a paying client would be willing to pay," recognizing that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 190. There is a rebuttable presumption "that a reasonable, paying client would in most cases hire counsel from within [their] district, or at least counsel whose rates are consistent with those charged locally." Id. at 191. This presumption is rebuttable because the "legal communities of today are increasingly interconnected," so "[t]o define markets simply by geography is too simplistic," thus "[s]ometimes, legal markets may be defined by practice area." Id. at 192.

Regarding the determination of a reasonable number of hours, "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Upon review of the records, a court may exclude any claimed hours it finds to be "excessive, redundant, or otherwise unnecessary," Hensley, 461 U.S. at 434. However, "[t]here is no precise rule or formula for

making these determinations," and "trial courts need not, and indeed should not, become green-eyeshade accountants[, as the] essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." Id. at 436; Fox v. Vice, 563 U.S. 826, 838 (2011).

### III. <u>DISCUSSION</u>

A.   <u>OBJECTIVELY REASONABLE BASIS FOR REMOVAL</u>

As the Court's December 22, 2022 Order awarding Capital2Market attorney's fees (see Dkt. No. 36) reflects, Camston Wrather had no objectively reasonable basis for removing this action from State Court. Camston Wrather's basis for removal in this case did not turn on an ambiguous point of law or an elusive fact they could not be certain of in advance, but instead simple and fundamental factual details about their own corporate structure.

Clues were plentiful. For instance, an internal capitalization table for Camston Wrather dated August 12, 2022, that Andrew Litt consulted in connection with his December 9, 2022 Corrected Sworn Declaration identified significantly more than the two members listed in the Notice of Removal. (See Dkt. No. 32-1 ¶ 5.) Further, Attachment A to Camston Wrather's Notice of Removal was its 2014 Application to Register a Foreign Limited Liability Company, which clearly stated that the company was formed in Delaware and

was not "formed as a limited liability company in the State of California." (See Dkt. Nos. 5, 5-5.) And a cursory visit to the California and Delaware Secretary of State websites reveals that, at the time of this Order, only a single entity bears Camston Wrather's full name in either jurisdiction, and that entity was formed in Delaware in 2014. Thus, Camston Wrather believed that "an extensive fact-finding exercise [was] necessary" to determine whether diversity jurisdiction existed in this case, yet failed to fact-check even the most basic and readily available information. (See Dkt. No. 14.)

In finding that Camston Wrather had no objectively reasonable basis for removing the action, the Court recognizes that the practice of law can be complex, and that both counsel and their clients can and likely will make mistakes. Zealous advocacy is encouraged but must take place against a backdrop of basic diligence and transparency with the Court. By contrast, Camston Wrather and its counsel compounded the company's basic failures of diligence by attempting to obscure and deflect, rather than disclose and acknowledge, its misrepresentations. (See, e.g., Dkt. Nos. 27, 30, 34, 38.) Such conduct and basic failures justify the Court's decision to impose sanctions on Camston Wrather. The Court, however, must still determine the amount of the sanctions.

B.   Calculation and Amount of Fee Award

As mentioned above, the Declaration submitted by Capital2Market described the backgrounds and billing rates of its counsel, Scarola and Zubatov, and provided a breakdown of the time they spent litigating the issue of removal. The charges totaled 95.3 hours at a value of $60,457.50, based on the billing rates claimed. (See Dkt. Nos. 37, 37-1.) The Declaration also provided a breakdown of the time Scarola and Zubatov spent addressing the issue of sanctions, including preparing the Declaration. This expense totaled 22.9 hours at a value of $14,008.50. (See Dkt. Nos. 37, 37-2.)

The Court next considers Camston Wrather's argument that no fees should be awarded here because Capital2Market has an alternative fee arrangement with its counsel, before assessing the hourly rates for Scarola and Zubatov, and whether the time they devoted on each issue was reasonable or should be adjusted to reach a reasonable fee.

1. Alternative Fee Arrangement and the Award of Attorney's Fees

In response to the Declaration, Camston Wrather argues that no fees should be awarded because Capital2Market has an alternative fee arrangement with its counsel, meaning that "no documentation was submitted as to *any* sums expended" and thus any fee award would be "a windfall." (See Dkt. No. 38

(emphasis in original).) Camston Wrather provides no support for its position, and the Court disagrees that a fee award would constitute a "windfall" here for two reasons. (<u>See</u> Dkt. No. 38.)

First, as the Ninth Circuit concluded in <u>Gotro v. R&B Realty Grp.</u>, the text and legislative history of Section 1447(c) undermine Camston Wrather's argument. <u>See</u> 69 F.3d 1485, 1487 (9th Cir. 1995). In <u>Gotro</u>, defendants appealed the district court's award of attorney's fees under Section 1447(c) where the plaintiff had a contingent fee award with their counsel. <u>Id.</u> Defendants argued that Section 1447(c) "precludes a district court from awarding attorneys' fees to a litigant who has not actually incurred an obligation to pay those fees" because Section 1447(c) applies only to "actual expenses, including attorney's fees, incurred." <u>Id.</u> 28 U.S.C. Section 1447(c). In its decision, the Ninth Circuit considered "whether by choosing the words 'any *actual* expenses, including attorney's fees, *incurred*'[,] Congress intended to remove the discretion of the district court to award fees in certain cases, such as contingent fee or pro bono cases, where the client has not actually 'incurred' the obligation to pay [their] attorneys' fees." <u>Gotro</u>, 69 F.3d at 1487 (emphasis in original).

18

After reviewing the background of Section 1447(c), the Ninth Circuit determined that "[t]he legislative history of section 1447(c) [sic] provides adequate explanation for Congress' choice of words 'actual expenses incurred,'" holding that "[t]hese words do not limit [a] district court's discretion to award attorneys' fees to a contingency fee litigant," and affirming the district court's award of fees. Id. at 1487-88; see also Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC, 373 F. Supp. 3d 398, 402 (E.D.N.Y. 2019) (collecting cases, including Gotro, and holding that Section "1447(c) permits the recovery of attorneys' fees by parties represented on a *pro bono* basis.").

Second, and beyond the context of Section 1447(c), the award of attorney's fees here would not constitute a "windfall." To the contrary, allowing a party to baselessly waste other parties' time without consequence would amount to a windfall. Unnecessary time and effort were expended because of Camston Wrather's misrepresentations, and regardless of the outcome of this litigation or the fee arrangement between Capital2Market and its counsel, such work should be compensated by Camston Wrather.

Accordingly, the Court will proceed to assess whether the hourly rates charged and hours expended by Scarola and Zubatov were reasonable.

### 2. <u>Hourly Rates</u>

Per the Declaration, Scarola's billing rate during this action was $765 per hour and Zubatov's billing rate during this action was $495 per hour. (<u>See</u> Dkt. No. 37 ¶ 11.) The Court notes that Camston Wrather did not object to the hourly rates of Scarola or Zubatov. (<u>See</u> Dkt. No. 38.) Taking into account the <u>Johnson</u> considerations, its own knowledge of the relevant market, and the lack of dispute on this issue, the Court finds Scarola and Zubatov's billing rates to be reasonable.

### 3. <u>Removal Issue Hours and Fees</u>

The Court first considers work done on the removal issue in this action. Per the Declaration, Scarola and Zubatov expended 49.2 and 46.1 hours respectively on this issue. (<u>See</u> Dkt. Nos. 37 ¶ 13, 37-1.) The Court notes that Camston Wrather briefly objects to the hours expended in connection with the motion for remand, writing "[a] motion for remand would correspond to 15 or 20 billable hours if drafted by experienced attorneys." (<u>See</u> Dkt. No. 38.) The Court has reviewed the Declaration and finds the time claimed by both Scarola and Zubatov for work done on the removal issue to be reasonable. The work performed is in the amount, and of the type, the Court would expect in this action, including correspondence with their client and opposing counsel, review

of court orders and submissions by opposing counsel, as well as legal research and drafting. (See id.)

Accordingly, the Court finds that Capital2Market should be awarded fees of $60,457.50 for work done on the issue of removal. This figure is based on 49.2 hours expended by Scarola multiplied by $765, totaling $37,638, and 46.1 hours expended by Zubatov multiplied by $495, totaling $22,819.50.

### 4. Sanction Issue Hours and Fees

The Court next considers work performed by Plaintiff's counsel on the sanction issue in this case. Per the Declaration, Scarola and Zubatov expended 9.9 and 13 hours respectively regarding this issue. (See Dkt. Nos. 37 ¶ 13, 37-2.) The Court notes that Camston Wrather raised no objection to an award of fees for work done on the issue of sanctions or to the hours expended. (See Dkt. No. 38.) The Court finds that the type of work and the hours expended on the sanction issue to be reasonable, however, the Court trims one hour from Scarola's hours (Slip ID 148259) and 5.1 hours from Zubatov's hours (Slip IDs 148180 and 148353), because those entries either involve work done beyond the scope of the Court's sanction order or appear duplicative. (See Dkt. No. 37-2.)

Accordingly, the Court finds that Capital2Market should be awarded fees of $10,719. This figure is based on 8.9 hours

expended by Scarola multiplied by $765, totaling $6,808.50, and 7.9 hours expended by Zubatov multiplied by $495, totaling $3,910.50.

    5. <u>Request for Further Submissions</u>

As a final point, the Court acknowledges Capital2Market's requests to submit further documentation regarding how Camston Wrather's submissions are "misleading if not additional outright misrepresentations." (<u>See</u> Dkt. Nos. 35, 37.) The Court denies Capital2Market's request. However, Capital2Market is free to raise its concerns before the State Court and appropriate ethical bodies as it sees fit.

## IV.   <u>ORDER</u>

For the reasons stated above, defendant Camston Wrather, LLC is hereby **ORDERED** to pay $71,176.50 in attorney's fees to plaintiff Capital2Market Consulting, LLC within 20 days of the date of this Order. The Clerk of Court is respectfully directed to close the case, terminate all pending motions, and transmit a copy of the Court's December 13, 2022 Order (<u>see</u> Dkt. No. 33), that remanded this action, to the Supreme Court of the State of New York, New York County.

**SO ORDERED.**

Dated:   6 March 2023
        New York, New York

                                       Victor Marrero
                                          U.S.D.J.